[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 504.]

THE STATE EX REL. BYRD, APPELLANT, *v*. AMERICAN STANDARD, INC. ET AL., APPELLEES.

[Cite as State ex rel. Byrd v. Am. Std., Inc., 1997-Ohio-187.]

*Workers' compensation—Denial of application for permanent total disability compensation by Industrial Commission an abuse of discretion and limited writ issued when commission's analysis of nonmedical factors is inadequate.*

(No. 95-4—Submitted March 4, 1997—Decided June 4, 1997.)

Appeal from the Court of Appeals for Franklin County, No. 94APD01-35.

_____

{¶ 1} Appellant-claimant, Bonnie R. Byrd,  sustained two injuries in the course of and arising from his employment with appellee Mosler Safe Company, n.k.a. American Standard, Inc.  His workers' compensation claims were collectively allowed for "low-back, post traumatic depression, upper back, neck, left arm."  Claimant also has many serious nonindustrial health problems, including lupus, hypertension, underactive thyroid, gout, glaucoma, gastritis, angina, severe diabetes, hepatitis, pericarditis, pleuritis, and chronic obstructive pulmonary disease.  It is undisputed that these unrelated problems permanently preclude employment.

{¶ 2} Claimant moved appellee Industrial Commission of Ohio for permanent total disability in 1987.  Claimant's attending physician Vlado Gracanin reported:

"Mr. Byrd is suffering from chronic pain syndrome, manifested by chronic back and neck strain as well as arthritic pains in various joints, particularly hips and knees.  In addition to this, he is suffering from rather severe diabetes mellitus, systemic lupus, hypertension.  Patient is undergoing treatment for all these

conditions and in addition to orthopedic specialists, also a psychiatrist is rendering treatment particularly in connection with chronic pain syndrome.

"I believe that the patient has a permanent, total disability and he will never be able to be gainfully employed."

{¶ 3} Arthritis, hip, knee, diabetes, lupus and hypertension, again, are not allowed in this claim.

{¶ 4} Dr. Norman L. Berg wrote:

"In my opinion the claimant's industrial injuries (low-back and post-traumatic depression; lumbosacral strain; upper back, neck, and left arm) prevent him from returning to his former position of employment. In my opinion the client's condition is permanent. I rate the client as having 50% impairment based on depression resulting from the industrial injury. This would be in addition to allowance for the client's medical/orthopedic condition. In my opinion the client's industrial injuries (medical and psychological) prohibit him from engaging in any sustained remunerative employment.

"In my opinion, the client is not psychologically stable to participate in rehabilitation services. In order to take part in such services his depression and related anxiety would need to significantly improve and so would his physical health, and from my evaluation and review of materials it does not appear that these conditions will show significant improvement to the point where the client is capable of engaging in vocational rehabilitation."

{¶ 5} Psychologist George E. Parsons on May 1, 1987 concluded:

"I believe his current level of depression represents a permanent disability which I would rank at basically a 50% disability to the body as a whole. I believe the combination of his depression and the various physical problems in relationship to his back and his knee would render him unable to perform in his past relevant job and would directly interfere with his ability to be rehabilitated to other types of work activity."

**{¶ 6}** Claimant's knee problem has not been recognized in this claim.

**{¶ 7}** Dr. Enrique N. Kaufman assessed a thirty percent psychiatric impairment that he felt would prevent a return to the former position of employment. He did not comment on claimant's ability to do other work. Dr. Arnold R. Penix, who did comment on claimant's physical ability to do other work, thought that the claimant could hold sedentary employment. A twenty-seven percent impairment for the allowed orthopedic conditions was assessed.

**{¶ 8}** Combined-effects reviews were performed in 1991 and 1992. Drs. Walter A. Holbrook and Paul H. Dillahunt assigned a fifty-eight and a sixty-five percent impairment respectively. Both felt that claimant could do sedentary work.

**{¶ 9}** The commission's vocational rehabilitation division closed claimant's case after concluding that claimant's nonallowed conditions would prevent meaningful participation. Rehabilitation physician Patricia E. Wongsam wrote:

"This man has significant health problems. He has no rehabilitation potential at all. His back condition does limit his physical capacities to a sedentary level of physical activities. However, his other health problems imposes [*sic*] severe limitations and he cannot work in any kind of job. Internal medicine has also seen him today and has recommended that he is not a rehabilitation candidate. I have chosen to cancel his second day here as I feel it would be cruel to force him to participate in a vocational evaluation when it will not be useful and his endurance is so poor."

**{¶ 10}** Claimant's vocational consultant, Howard L. Caston, concluded that a combination of allowed conditions and nonmedical factors prevented employment.

**{¶ 11}** The commission denied permanent total disability, writing:

"The reports of Drs. Gracanin, Parsons, Penix, Berg, Holbrook, Kaufman, Dillahunt and Vocational Expert Center [*sic,* Caston] and Rehabilitation Closure

Memo of 6-19-90 were reviewed and evaluated. This order is based particularly upon the reports of Drs. Penix, Holbrook, Kaufman, and Dillahunt, and the evidence in the file and the evidence adduced at the hearing.

"Claimant is 57 years old, has a 10th grade education, and work experience as a foreman and supervisor. Claimant's treatment has been entirely conservative and claimant has not worked since October of 1980. Since the date of the industrial injuries, claimant has developed the following unrelated medical conditions: systemic lupus erythematous with complications including hepatitis, pericarditis and pleuritis; diabet[es]; underactive thyroid; angina; gout; glaucoma; gastritis; obesity; polyps removed from vocal chords; surgery on nose for breathing difficulties; and hypertension. Claimant's rehabilitation file was closed on 6-19-90 due to the severe limitations caused by these unrelated medical conditions. The closure memo indicates that the allowed conditions do not preclude sedentary work, but that the unrelated conditions prohibit any employment. The medical evidence found persuasive includes the reports of Drs. Penix, Kaufman, Holbrook and Dillahunt. Dr. Penix, Commission orthopedist, found a 27% impairment and stated that claimant is capable of sedentary employment. Dr. Kaufman, Commission psychiatrist, found a 30% psychiatric impairment. In the Commission's combined effect reviews, Drs. Holbrook and Dillahunt found total impairments of 58% and 65% respectively. Both reviewers opined that claimant is capable of sedentary low stress employment. The commission finds that claimant is not permanently and totally disabled. Based upon the above medical reports, claimant is capable of low stress sedentary work. Claimant's age is not a vocational limitation as he is still eight years from retirement age. Claimant's work experience as a foreman and supervisor is a vocation[al] asset. Thus, claimant has the vocational skills, based upon his age and work experience, to obtain work consistent with his physical and psychiatric limitation. Any inability to do work would not be related to the allowed conditions in these claims."

**{¶ 12}** Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in denying permanent total disability. The appellate court denied the writ after finding that the order fulfilled *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245.

**{¶ 13}** This cause is now before this court upon an appeal as of right.

*Casper & Casper* and *Douglas W. Casper*, for appellant.

*Taft, Stettinius & Hollister* and *Charles M. Stephan*, for appellee American Standard, Inc.

*Betty D. Montgomery*, Attorney General, and *Debra J. Randman*, Assistant Attorney General, for appellee Industrial Commission of Ohio.

———————————

***Per Curiam.***

**{¶ 14}** Compliance with *Noll* is once again the central question at bar. The parties do not seriously dispute the sufficiency of the commission's medical analysis, presumably because there is nothing to attack. The reports of Drs. Holbrook and Dillahunt are some evidence supporting the claimant's ability to do sedentary work. Resolution thus turns on the adequacy of the commission's analysis of nonmedical factors. Upon review, we find that the order does not satisfy *Noll* and accordingly reverse the court of appeals.

**{¶ 15}** Claimant's nonallowed conditions undoubtedly prevent claimant from ever returning to the work force. These conditions, however, do not foreclose a finding of permanent total disability attributed to the allowed conditions. Clearly, a claimant cannot *combine* the allowed and nonallowed conditions to establish permanent total disability. *State ex rel. LTV Steel Co. v. Indus. Comm.* (1992), 65 Ohio St. 3d 22, 599 N.E.2d 265. Where the allowed conditions, on the other hand, are *independently* disabling, they do not preclude compensation. As stated in *State*

*ex rel. Waddle v. Indus. Comm.* (1993), 67 Ohio St.3d 452, 457-458, 619 N.E.2d 1018, 1022:

"A claimant whose allowed conditions, either alone or together with nonmedical factors, prevent sustained remunerative employment should not be penalized in a permanent total disability determination simply because he or she is unfortunate enough to have other health problems. We, therefore, find that the mere presence of nonallowed disabling conditions does not automatically foreclose a finding of permanent total disability."

{¶ 16} Since nonallowed conditions do not preclude permanent total disability, they do not excuse the commission from fully reviewing permanent total disability, including an analysis of nonmedical factors. In this case, the commission indeed examined claimant's nonmedical factors, but its review is deficient in several respects. The most apparent flaw is its failure to include claimant's education in its discussion of nonmedical factors. However, even among those factors that it did address, its analysis is incomplete.

{¶ 17} The commission stated that claimant's "work experience as a foreman and supervisor is a vocation[al] asset." This would be a defensible conclusion *if* claimant's supervisory experience yielded skills that were transferable to the sedentary work to which claimant is restricted. Unfortunately, this is not clear from the nature of claimant's former work, and the commission has failed to elaborate.

{¶ 18} Claimant worked as an assembler and spot-welder for Mosler Safe. He later became a supervisor. If claimant's supervisory tenure entailed more white collar administrative and personnel responsibilities, claimant may well have developed skills transferable to sedentary work. However, if the supervisor/foreman title simply designated the senior person on a hands-on project, transferable skills may not exist. Thus, the commission must further explain its reasoning.

**{¶ 19}** The commission's treatment of claimant's age is also problematic. It invites scrutiny not because his age was viewed favorably, but because of the reason given by the commission for so finding. Claimant's age was viewed positively because at age fifty-seven, claimant was "still eight years from retirement age." From this springs the inference that if claimant were of retirement age, his age would be deemed an employment obstacle.

**{¶ 20}** The difficulty with this reasoning is that in today's workplace, retirement age is a more nebulous concept than it once was. With the advent of corporate restructuring, employees have been encouraged as never before to leave the workplace early. Retirement by workers who are only in their fifties is now commonplace. Thus, the commission's statement that claimant is outside retirement age is not completely accurate, and, as such, cannot stand as the sole basis for viewing age favorably.

**{¶ 21}** We therefore find that the requirements of *Noll* have not been met and order the commission to give further consideration to claimant's motion. Claimant's request for relief consistent with *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666, is rejected pursuant to *State ex rel. Hanna v. Indus. Comm.* (1994), 69 Ohio St.3d 120, 630 N.E.2d 693. There, we found that the existence of nonallowed conditions made *Gay* relief inappropriate. The same result is dictated here.

**{¶ 22}** The judgment of the court of appeals is hereby reversed, and the commission is ordered to give further consideration to claimant's motion and issue an amended order.

*Judgment reversed*
*and limited writ granted.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

LUNDBERG STRATTON, J., dissents.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 23} While I have great sympathy for the claimant's myriad of problems, nevertheless, all reports conclude that his *allowed conditions* do not prevent the claimant from engaging in sedentary work. His age is adequately explained. Because the commission's order and conclusions were supported by "some evidence," which is our proper standard of review, I would affirm the court of appeals.

_____